## FAIRPORT, PAINESVILLE & EASTERN RAILROAD CO. *v.* MEREDITH.

No. 820. Argued May 4, 7, 1934.—Decided June 4, 1934.

---

[18] See instructions issued April 11, 1934, by the Administrator of Veterans' Affairs, pursuant to the Act of March 27–28.

Messrs. *Atlee Pomerene* and *Elbert F. Blakely,* with whom *Messrs. Harry T. Nolan* and *Thomas M. Kirby* were on the brief, for petitioner.

*Mr. David F. Anderson* for respondent.

Mr. Justice Sutherland delivered the opinion of the Court.

Respondent recovered judgment against petitioner upon the verdict of a jury in an Ohio state court of first instance for a personal injury resulting from a collision at a railroad-highway crossing between an automobile which she was driving and a train of cars operated by petitioner over its line of railroad. There is evidence that the train approached the crossing without sounding the whistle of the engine or ringing the bell so as to give warning of the train's approach. There is also evidence which fairly establishes that as respondent drew near the crossing the train was in plain view for a sufficient length of time to have enabled respondent, by the use of ordinary care, to see the train, stop and avoid the collision, and, therefore, that she was guilty of contributory negligence. *Miller* v. *Union Pacific R. Co.*, 290 U.S. 227, 231. The train was equipped with air brakes, in conformity with the federal Safety Appliance Act, as amended, U.S.C., Title 45, c. 1, §§ 1 and 9,[1] and the orders of the Interstate

---

[1] Section 1. It shall be unlawful for any common carrier engaged in interstate commerce by railroad to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving-wheel brake and appliances for operating the train-brake system, or to run any train in such traffic that has not a sufficient number of cars in it so equipped with power or train brakes that the engineer on the locomotive drawing such train can control its speed without requiring brakemen to use the common hand brake for that purpose.

Section 9. Whenever, as provided in this chapter, any train is operated with power or train brakes not less than 50 per centum of the cars in such train shall have their brakes used and operated by the engineer of the locomotive drawing such train; and all power-braked cars in such train which are associated together with said 50 per centum shall have their brakes so used and operated; and, to more fully carry into effect the objects of said chapter, the Interstate Commerce Commission may, from time to time, after full hearing, increase the minimum percentage of cars in any train required to be

Commerce Commission made thereunder; but the air was disconnected between the cars and the engine, leaving the brakes of the engine and tender as the only means of stopping the train or checking its speed, thus constituting a clear violation of the act, since the requirement that a train shall be equipped with power brakes necessarily contemplates that they shall be maintained for use. See *United States* v. *Great Northern Ry. Co.*, 229 Fed. 927, 930.

The complaint alleges, as one ground of negligence, failure on the part of petitioner to make an air connection between the engine and cars, and to maintain and use the power brakes. In respect of that ground of negligence the trial court instructed the jury, in effect, that if the violation of the federal act resulted proximately or immediately in the injury complained of, the railroad company was liable. But the jury was also told that if respondent was guilty of contributory negligence she could not recover notwithstanding the negligence of petitioner. The trial court also instructed the jury in respect of the doctrine of the last clear chance—its view apparently being that, notwithstanding the contributory negligence of respondent, petitioner would be liable if, after the danger to respondent became apparent, it could have avoided the injury but for its antecedent failure to maintain and use an equipment of air brakes such as required by the federal act.

The appellate court, in sustaining the judgment of the trial court, held: (1) that the federal law violated by petitioner was enacted not only for the protection of railroad employes and passengers on railroad trains, but

operated with power or train brakes which must have their brakes used and operated as aforesaid; and failure to comply with any such requirement of the said Interstate Commerce Commission shall be subject to the like penalty as failure to comply with any requirement of this section.

the public generally—that is to say, as applied to the present case, that the requirement of the federal Safety Appliance Act as to power-controlled brakes and their use imposed a duty upon the railroad company in respect of travelers at railroad-highway crossings; and (2) that the instructions of the trial court in respect of the doctrine of the last clear chance correctly stated the law. 46 Ohio App. 457; 189 N.E. 10.

These two rulings present the questions which the writ brings here for consideration.

*First.* The contention of petitioner is that the federal Safety Appliance Act was intended only for the protection of employes and travelers upon the railroads, and has no relation to the safety of travelers upon highways or of the public generally. Very likely, the primary purpose in the mind of Congress was to protect employes and passengers. So much is indicated by the title—"An act to promote the safety of employes and travelers upon railroads " etc. And this is borne out by the history of the legislation. President Harrison in his first annual message to Congress called attention to the need of legislation for the better protection of the lives and limbs of those engaged in operating the interstate freight lines of the country, and especially the yard men and brakemen, and expressed the view that Congress had power to require uniformity in the construction of cars used in interstate commerce and the use of approved safety appliances upon them.

But we are asked to hold that the title expresses the sole intent of the act, and this involves a question of statutory construction. The title of an act and the history leading up to its adoption, as aids to statutory construction, are to be resorted to only for the purpose of resolving doubts as to the meaning of the words used in the act in case of ambiguity. *Patterson* v. *Bark Eudora,* 190 U.S. 169, 172; *Cornell* v. *Coyne,* 192 U.S. 418,

430; *Lapina* v. *Williams*, 232 U.S. 78, 92. Compare *Russell Motor Car Co.* v. *United States*, 261 U.S. 514, 519, 522. But here the words of §§ 1 and 9 of the act speak plainly and nothing in the nature or operation of the legislation requires, or suggests the necessity of, an appeal to extrinsic aids to determine their meaning. It may be that the protective operation of § 2 of the act requiring automatic couplers [2] was not meant to extend to persons other than employes. Compare *St. Louis & S. F. R. Co.* v. *Conarty*, 238 U.S. 243; *Louisville & Nashville R. Co.* v. *Layton*, 243 U.S. 617, 620; *Lang* v. *New York Cent. R. Co.*, 255 U.S. 455; *Davis* v. *Wolfe*, 263 U.S. 239, 243; *Philadelphia & R. Ry. Co.* v. *Eisenhart*, 280 Fed. 271. But the installation and use of power brakes required by §§ 1 and 9 so obviously contribute to the safety of the traveler at crossings that it is hardly probable that Congress could have contemplated their inapplicability to that situation.

Section 9, *supra*, provides that when a train is operated with power or train brakes, not less than 50 per cent. (under regulation of the Interstate Commerce Commission now 85 per cent.) of the cars in such train shall have their brakes used and operated by the engineer of the locomotive drawing the train. That a train so equipped and operated can be brought to a stop much more quickly than by the use of hand brakes is, of course, perfectly clear; and it is reasonable to conclude that a result so readily perceivable lies within the purview of the requirement. The most important purpose of a brake upon any vehicle is to enable its operator to check its speed or stop

[2] Section 2. It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.

it more quickly than would otherwise be possible. The old railway hand brake was principally for that purpose, but it was undesirable for two reasons—first, because in setting it the brakeman was exposed to danger, and second, and especially in the case of long heavy trains, it did not meet the necessity of stopping the train quickly in emergencies. In this second aspect, the common law duty of the railway company to use ordinary care to provide and keep in reasonably safe condition adequate brakes for the control of its trains was one owing, among others, to travelers in the situation which the respondent here occupied. Sections 1 and 9 of the Safety Appliance Act converts this qualified duty imposed by the common law into an absolute duty, from the violation of which there arises a liability for an injury resulting therefrom to any person falling within the terms and intent of the act. Compare *Louisville & Nashville R. Co.* v. *Layton, supra,* 620; *St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 210 U.S. 281, 295. To confine the beneficial effect of these provisions to employes and passengers would be to impute to Congress an intention to ignore the equally important element which their enactment actually contributes to the safety of travelers at highway crossings. Since all of these three classes of persons are within the mischief at which the provisions are aimed, it is quite reasonable to interpret the statute imposing the duty as including all of them.

It fairly may be said that the nature of the duty imposed by a statute and the benefits resulting from its performance usually determine what persons are entitled to invoke its protection. In *Atchison, T. & S. F. R. Co.* v. *Reesman,* 60 Fed. 370, where the railroad company failed to erect and maintain sufficient fences, as required by a state statute, in consequence of which an animal got upon the track and derailed the train, it was held than an employe upon the train who was injured was entitled to recover under the statute. In the opinion,

delivered by Mr. Justice Brewer (pp. 373-374), it is said:

"At any rate, it is clear that the fact that certain classes of persons were intended to be primarily protected by the discharge of a statutory duty will not necessarily prevent others, neither named nor intended as primary beneficiaries, from maintaining an action to recover for injuries caused by the violation of such legislative command. It may well be said that, though primarily intended for the benefit of one class, it was also intended for the protection of all who need such protection. . . . The purpose of fence laws, of this character, is not solely the protection of proprietors of adjoining fields. It is also to secure safety to trains. That there should be no obstruction on the track is a matter of the utmost importance to those who are called upon to ride on railroad trains. Whether that obstruction be a log placed by some wrongdoer, or an animal straying on the track, the danger to the trains, and those who are traveling thereon is the same. To prevent such obstruction being one of the purposes of the statute, any one whose business calls him to be on a train has a right to complain of the company, if it fails to comply with this statutory duty."

See also *Hayes* v. *Michigan Central R. Co.*, 111 U.S. 228, 239-240, and other authorities cited in the *Reesman* case.

In the light of what has now been said, it follows that the duty imposed upon petitioner by the provisions of the act in respect of power-controlled brakes extends to and includes travelers at railway-highway crossings.

*Second.* The holding of the court below as to the doctrine of the last clear chance is challenged as being contrary to the weight of American authority;[3] but we are

---

[3] See, for example, *Illinois Cent. R. Co.* v. *Nelson*, 173 Fed. 915; *St. Louis & S. F. R. Co.* v. *Summers*, 173 Fed. 358; *Smith* v. *Norfolk*

precluded from considering the contention because it does not present a federal question. The federal Safety Appliance Act, as we already have said and this court repeatedly has ruled, imposes absolute duties upon interstate railway carriers and thereby creates correlative rights in favor of such injured persons as come within its purview; but the right to enforce the liability which arises from the breach of duty is derived from the principles of the common law. The act does not affect the defense of contributory negligence, and, since the case comes here from a state court, the validity of that defense must be determined in accordance with applicable state law. *Moore* v. *C. & O. Ry. Co.*, 291 U.S. 205, 214 *et seq.*, and cases cited; *Gilvary* v. *Cuyahoga Valley Ry. Co., ante*, p. 57. And see *Schlemmer* v. *Buffalo, R. & P. Ry. Co.*, 205 U.S. 1, upon second appeal, 220 U.S. 590, 598. The same is true of the doctrine of the last clear chance, which likewise is not affected by the act. If doubt might otherwise exist in respect of the specific application of the cases cited to that doctrine, regarded independently, the doubt would vanish when consideration is given to the relation which it bears to the rule of contributory negligence, namely, that it amounts in effect to a qualification of that rule, *Atchison, T. & S. F. Ry. Co.* v. *Taylor*, 196 Fed. 878, 880, having the result of relieving the injured person from the consequences of his violation of it.

Nothing we have said is to be understood as indicating our acceptance, as a substantive principle, of the ruling of the court below in respect of the point. That question is left open for consideration and determination when, if ever, it shall be so presented as to admit of its being dealt with upon its merits.

*Judgment affirmed.*

& *Southern R. Co.*, 114 N.C. 728, 734–735; 19 S.E. 863; *Hays* v. *Gainesville Street Ry. Co.*, 70 Texas 602, 607; 8 S.W. 491. *Contra:* *Thompson* v. *Salt Lake Rapid Transit Co.*, 16 Utah 281, 292; 52 Pac. 92.