## SWINSON v. CHICAGO, ST. P., M. & O. RY. CO.

### No. 9965.

Circuit Court of Appeals, Eighth Circuit.

Aug. 1, 1934.

Ernest A. Michel, of Minneapolis, Minn. (Tom Davis and Carl L. Yaeger, both of Minneapolis, Minn., on the brief), for appellant.

Warren Newcome, of St. Paul, Minn. (William T. Faricy, of Chicago, Ill., and Alfred E. Rietz, of St. Paul, Minn., on the brief), for appellee.

Before GARDNER and SANBORN, Circuit Judges, and DEWEY, District Judge.

SANBORN, Circuit Judge.

The parties will be referred to as in the court below. Swinson brought this action under the Federal Employers' Liability Act (Act of April 22, 1908, c. 149, 35 Stat. 66, 45 U. S. C. § 53 [45 USCA § 53]) to recover for personal injuries, alleging a violation of the provisions of the Safety Appliance Acts relating to handholds (Act of March 2, 1893, c. 196, § 4, 27 Stat. 531, 45 U. S. C. § 4 [45 USCA § 4]) and running boards (Act of April 14, 1910, c. 160, § 2, 36 Stat. 298, 45 U. S. C. § 11 [45 USCA § 11]). The defendant denied liability. Upon the trial, at the close of the evidence, the court directed a verdict for the defendant, and from the judgment entered thereon this appeal is taken.

The plaintiff's evidence tended to show that, at the time of the accident, he was a freight brakeman employed by the defendant and engaged in interstate commerce; that the accident occurred on September 17, 1932, at about 9 o'clock p. m., at Mitchell, S. D.; that he was releasing a tight brake at the west end of a tank car which was in a train moving slowly westward; that the tank car was equipped with running boards 11 inches wide, which extended around the sides and ends of the tank; that the brake which he was releasing was in the middle of the end running board—that is, equidistant from its east and west edges—and about 34 inches from its north edge, the board being 9 feet long and 1¾ inches thick; that the car was equipped with end handholds which were bolted to the under side of the end running board and extended horizontally or outwardly; that one of the handholds was near the north end of the west edge of the running board, and 1¾ inches, or the thickness of the board, below its upper surface; that in releasing the brake the plaintiff placed his left foot on the running board adjacent to the pawl of the brake, and his right foot upon this handhold, which was 18 or 20 inches long and extended 2½ to 4 inches beyond the edge of the board; that he exerted pressure in releasing the brake; that as the brake released, the bolt, which held the outer or north end of the handhold to the running board, pulled through the board, causing him to fall to the track; that after the accident the wood of the board where the bolt had pulled through looked old, decayed, and was split; that it was customary for brakemen to place their feet on handholds of this type when releasing brakes, and to use such handholds for steps in going from one car to another.

The defendant's evidence tended to show that the handhold in question was a rounded iron bar about ⅝ of an inch in diameter; that it extended about 2¾ inches beyond the edge of the board; that the most northerly bolt hole was 2¼ inches from the north edge of the board, and both bolt holes were 1¾ inches from the west edge of the board; that it was 42 inches from the ground to the surface of the running board; that these end handholds were no part of any ladder or steps leading from near the ground to the running board; that they were intended to be used and were used as handholds and only for the protection of employees going between the ends of cars; that, under the order of the Interstate Commerce Commission, they could extend either horizontally or vertically; that about 90 per cent. of such cars were equipped with those extending vertically; that when the handholds extended

vertically from the running board, they could not be used as footholds or foot braces in setting or releasing brakes; that it was not usual or customary for trainmen to use them for any purpose except as handholds.

It is, of course, conceded that the defendant was under the absolute duty of maintaining this handhold in a secure condition for the purpose for which it was intended, and that any employee who, while using it for its intended purpose, was injured as a result of its being defective for that purpose, could recover. It is contended, however, that since Swinson was using this handhold as a foothold, foot rest or foot brace, the defendant owed him no duty to furnish him a handhold sufficient for that purpose or any handhold at all, and that he was in no better position in using a defective handhold for a foothold than he would have been in had there been no handhold and had he been injured in groping for a nonexistent handhold with his right foot. It is also contended that there was no evidence that there was any violation of the Safety Appliance Acts, since proof that the handhold was insufficient as a foothold did not establish that it was not secure for the purpose for which it was intended.

█ It would, of course, be true that if the defendant furnished and maintained a handhold adequate for its intended purpose, it was not guilty of any violation of the Safety Appliance Act. Erie R. Co. v. Lindquist (C. C. A. 3) 27 F.(2d) 98; Lehigh & N. E. R. Co. v. Smale (C. C. A. 3) 19 F.(2d) 67; Ford v. New York, N. H. & H. R. Co. (C. C. A. 2) 54 F.(2d) 342, 343. Hence, if the pulling out of the handhold was due to no inadequacy for its intended purpose, but solely to its inadequacy for a use not intended, there would be no breach of duty upon which to base a claim of liability. However, we are of the opinion that there was sufficient circumstantial evidence as to the strain to which it was subjected and the condition of the board after the accident to justify the conclusion that the handhold was defective for the purpose for which it was intended.

We are convinced, however, that this handhold was not intended for use in the way it was used by Swinson, nor was it suitable for such use, nor was the defendant required to anticipate that it would be so used. Swinson seems to have demonstrated that it was physically possible to use the handhold in that way, but, at best, it obviously would furnish an insecure foothold or foot brace to a man with his feet spread some thirty inches apart and struggling to release a tight brake on a moving train.

We think this case must be dealt with on the basis that the handhold was defective as a handhold, that its giving way caused Swinson to fall, but that, at the time he was using it, he was using it in a way and for a purpose for which it was not intended or required, and that the accident was not one which might reasonably be expected to happen from a failure to furnish or to maintain a secure end handhold.

The court below was of the opinion that, under such circumstances, Swinson could not recover. The plaintiff contends that, having shown a violation of the provision of the Safety Appliance Act relating to handholds (the violation of the provision relating to running boards is not now urged), and having shown that it was the giving way of the defective handhold which caused his injury, the violation must be regarded as the proximate cause of the injury, and that therefore he can recover.

We do not find that the precise question has been decided by the Supreme Court, and, until it is, there is bound to be some uncertainty as to the correct rule to apply to this situation. See dissenting opinion in Lang, Admx., v. New York Central R. Co., 255 U. S. 455, 461, 41 S. Ct. 381, 65 L. Ed. 729.

█ We know that a violation of the Safety Appliance Acts imposed an absolute liability upon the defendant in favor of any one of the class for whose benefit these statutes were enacted and who was injured as a result of such violation. St. Louis, Iron Mountain & Southern Ry. Co. v. Taylor, Admx., 210 U. S. 281, 295, 28 S. Ct. 616, 52 L. Ed. 1061; Chicago, B. & Q. Ry. Co. v. United States, 220 U. S. 559, 570, 31 S. Ct. 612, 55 L. Ed. 582; Texas & Pacific R. Co. v. Rigsby, 241 U. S. 33, 36 S. Ct. 482, 60 L. Ed. 874; Louisville & Nashville R. Co. v. Layton, 243 U. S. 617, 620, 621, 37 S. Ct. 456, 61 L. Ed. 931; Davis v. Wolfe, 263 U. S. 239, 44 S. Ct. 64, 68 L. Ed. 284; Lehigh Valley R. Co. v. Beltz (C. C. A. 2) 10 F.(2d) 74; Ford v. N. Y., N. H. & H. R. Co. (C. C. A. 2) 54 F.(2d) 342, 343, supra; Fairport, Painesville & Eastern R. Co. v. Meredith, 54 S. Ct. 826, 828, 78 L. Ed. 1446 (opinion filed June 4, 1934).

█ We also know that to support recovery there must be a causal relation between the violation and the injury, Lang, Adm'x, v. New York Central R. Co., supra, 255 U. S. 455, 459, 41 S. Ct. 381, 65 L. Ed. 729;

Davis v. Wolfe, supra, 263 U. S. 239, 243, 44 S. Ct. 64, 68 L. Ed. 284.

In order to recover, therefore, it was necessary that Swinson prove, in addition to a violation of a provision of the Safety Appliance Acts, that such violation was the proximate cause of his injuries, and that he was one of the class for whose benefit the statutes were enacted.

Section 4 of the Act of March 2, 1893, c. 196, 27 Stat. 531 (45 USCA § 4), provides: "That from and after the first day of July, eighteen hundred and ninety-five, until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars."

▮▮▮ The fact that Swinson was not engaged in a coupling operation at the time he was injured is not controlling on the question of whether he was within the class for whose benefit the law was enacted. Louisville & Nashville R. Co. v. Layton, supra, 243 U. S. 617, 37 S. Ct. 456, 61 L. Ed. 931; Minneapolis & St. Louis R. Co. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. Ed. 995; Davis v. Wolfe, supra, 263 U. S. 239, 44 S. Ct. 64, 68 L. Ed. 284; Fairport, Painesville & Eastern R. Co. v. Meredith, supra, 54 S. Ct. 826, 78 L. Ed. 1446. If he had been using the handhold as a handhold, although for a purpose not connected with the coupling or uncoupling of cars, he could have recovered if injured because of its defects, under the rule announced in Davis v. Wolfe, supra; but the defendant owed him no duty, under the Safety Appliance Act, to furnish either a secure handhold or any handhold at all to be used as a foot brace. It was not required to anticipate that any such use would be made of the appliance, and, by using it in a manner not intended or contemplated, he placed himself in a class for whose benefit the law was not enacted, and, under the circumstances, the delinquency of the defendant was not the proximate cause of his injury.

These conclusions, we think, are supported by the case of St. Louis & San Francisco R. Co. v. Conarty, Adm'x, 238 U. S. 243, 35 S. Ct. 785, 786, 59 L. Ed. 1290; Lang, Adm'x, v. New York Central R. Co., supra, 255 U. S. 455, 41 S. Ct. 381, 65 L. Ed. 729, and by the reasoning in Davis v. Wolfe, supra, 263 U. S. 239, 44 S. Ct. 64, 68 L. Ed. 284. The Conarty Case and the Lang Case both dealt with deaths resulting from accidental collisions with "bad order" cars lacking drawbars and couplers. The presence of drawbars and couplers would have prevented the injuries, but their absence did not cause the collisions. It was held that there could be no recovery, because the men killed were not within the class of persons for whose benefit the Safety Appliance Acts required that the cars be equipped with automatic couplers and with drawbars of the standard height; that their injuries were not "within the evil against which the provisions for such appliances are directed"; that it could not be claimed that the collisions were proximately attributable to a violation of the provisions of the act, but only that, had they been complied with, there would have been no injuries; that couplers were not "intended to provide a place of safety between colliding cars."

The decision in the Lang Case was subsequent to that in the Layton Case, where the evidence was that Layton had been thrown off a string of box cars due to a collision resulting from the failure of an automatic coupler, and also the Gotschall Case, where a brakeman was killed by the opening of a coupler and the consequent setting of the brakes. Although in neither case was the injured man engaged in a coupling operation, it was held that the failure of the appliance was the proximate cause of the injury, and that these men were of the class entitled to the benefits of the act, and that the rule of the Conarty Case did not apply. In the Layton Case, the court said (page 621 of 243 U. S., 37 S. Ct. 456, 457): "The language of the acts [Safety Appliance Acts] and the authorities we have cited make it entirely clear that the liability in damages to employees for failure to comply with the law springs from its being made unlawful to use cars not equipped as required,—not from the position the employee may be in, or the work which he may be doing at the moment when he is injured. This effect can be given to the acts and their wise and humane purpose can be accomplished only by holding, as we do, that carriers are liable to employees. in damages whenever the failure to obey these Safety Appliance Laws is the proximate cause of injury to them when engaged in the discharge of duty."

It is this language which the plaintiff strongly relies on here, but it will be noted that it did not prevent the rule announced in the Conarty Case being applied to the Lang Case.

Davis v. Wolfe, supra, was the case of a conductor who was standing on the side of a

car with his feet on a sill step and holding to a grabiron with his right hand. The grabiron was loose. He signalled for a stop. Instead, the train moved forward with a jerk, and, by reason of the loose grabiron, he fell and was injured. The same contention was made in that case as is made here, namely, that Wolfe was not in a situation where the defective grabiron operated as a breach of duty imposed for his benefit under section 4 of the act (45 USCA § 4), which required grabirons on behalf of the employees engaged in coupling or uncoupling cars or in service connected therewith. The court reviewed the Conarty Case, the Layton Case, the Gotschall Case and the Lang Case, and said (page 243 of 263 U. S., 44 S. Ct. 64, 66): "The rule clearly deducible from these four cases is that, on the one hand, an employee cannot recover under the Safety Appliance Act if the failure to comply with its requirements is not a proximate cause of the accident which results in his injury, but merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury; and, on the other hand, he can recover if the failure to comply with the requirements of the Act is a proximate cause of the accident, resulting in injury to him while in the discharge of his duty, although not engaged in an operation in which the safety appliances are specifically designed to furnish him protection." It was held that Wolfe could recover.

It will be noted that in the Davis Case, the Layton Case, and the Gotschall Case, the appliances failed to function in the manner and for the purpose intended. In the Conarty Case and the Lang Case they failed to function when relied upon for a purpose for which they were not intended or required, namely, to prevent collisions between cars or to provide a place of safety between cars. In the cases where the appliances were relied upon and failed to perform their intended function it was held that the violation of the Safety Appliance Acts was the proximate cause of the injury, while in those cases where the appliances were relied upon to perform a function for which they were not intended, it was held—to use the language of the Davis Case—that they merely created "an incidental condition or situation in which the accident, otherwise caused," resulted in injury.

This, we think, is due to the fact that in the Conarty Case and the Lang Case it was not to be anticipated that a violation of the act would produce the result complained of, nor was the result the natural or probable consequence of the violation.

In Milwaukee & St. Paul R. Co. v. Kellogg, 94 U. S. 469, 475, 24 L. Ed. 256, the court said: "But it is generally held, that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

Where a safety appliance fails to perform a function which it is intended to perform, and where such failure directly causes injury to a trainman engaged in the performance of his duties, as in the Layton Case, the Gotschall Case, and the Davis Case, the failure of the railroad company to comply with the act is clearly the proximate cause of the injury, but, where an appliance is used or relied upon for a purpose and function not intended, and its failure causes injury, it cannot be said to be the proximate cause of the injury, because the injury is not the natural, probable and foreseeable consequence of the failure to comply with the law. So in this case, while the giving way of the handhold resulted in Swinson's injuries, the failure of the defendant to comply with the provisions of the law cannot be said to be the proximate cause of those injuries which resulted from the unexpected and unintended use which was made of the handhold, nor was Swinson, under the circumstances, one of the class for whose benefit the law was enacted or to whom the duty of complying with it was owed, since his injuries were not "within the evil against which the provisions for such appliances are directed."

Our conclusion is that the court below was right in directing a verdict.

The judgment is affirmed.