VINCENT J. CARLO, PLAINTIFF-RESPONDENT, v. THE OKONITE-CALLENDER CABLE CO., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued October 10, 1949—Decided December 5, 1949.

*Mr. Joseph Coult* argued the cause for the appellant (*Mr. Wilbur A. Stevens,* attorney).

*Mr. Harry Tartalsky* argued the cause for the respondent (*Messrs. O'Brien & Tartalsky,* attorneys).

The opinion of the court was delivered by

BURLING, J. This is an appeal from the judgment of the Superior Court, Appellate Division, dated March 23, 1949, based upon a unanimous opinion reversing a judgment of the Passaic County Court entered October 14, 1948, upon an involuntary dismissal of an action which had been commenced in the Passaic County Court of Common Pleas prior to September 15, 1948. A motion by the plaintiff to dismiss this appeal and an alternative petition for certification by the defendant were held for consideration with the appeal.

The action of the plaintiff is bottomed on the alleged actionable negligence of the defendant. The gravamen of the complaint is that the defendant failed to exercise the care commensurate with risk of danger involved in the bottling, inspecting, packing and marking of a package containing certain bottles of bromine so as to indicate the dangerous contents thereof. It appears from the rather nebulous opening of the plaintiff at the trial of the cause that the issue was reduced and limited by the plaintiff to an alleged breach of duty on the part of the defendant in failing to properly mark and label the package of bromine as a dangerous material in accordance with a statute of New Jersey and certain regulations of the Interstate Commerce Commission prescribing the manner of packing and labeling.

The defendant denied negligence and pleaded contributory negligence and assumption of risk as affirmative defenses.

The defendant, a corporation of the State of New Jersey, is engaged in the manufacture of cable and insulated tape. The plaintiff, a resident of Passaic, New Jersey, is an employee of the Moon Carrier Corporation, a common carrier.

On July 21, 1945, the defendant shipped from its plant in Paterson, New Jersey, for delivery to the Dow Chemical Company in Jersey City, New Jersey, via its agent, the Moon Carrier Corporation, eleven cases containing quart bottles of bromine. The bromine had originally been sold to the defendant by the Dow Chemical Company and, being unused, was being returned to the latter company. One of the eleven cases contained five bottles of bromine which had been packaged by the defendant. The shipment was received by the Moon Carrier Corporation at the defendant's plant and taken to Clifton, New Jersey, to the premises of the Moon Carrier Corporation where it was removed from the first truck, placed upon a loading platform and then transferred to another truck, which was preparing to depart for Jersey City, New Jersey, and Bayonne, New Jersey, to be delivered to its destination, the Dow Chemical Company, in Jersey City, New Jersey. While the shipment was at rest at the Clifton, New Jersey, terminal of the Moon Carrier Corporation, the plaintiff discovered smoke emanating from the package containing the five bottles of bromine. He removed the package from the truck, pried off the lid and threw water on the smoking contents. An explosion ensued causing injury to the plaintiff.

We shall first dispose of the procedural question relative to the right of appeal from the judgment of the Appellate Division of the Superior Court in the instant case.

The present action was commenced in the Passaic County Court of Common Pleas prior to September 15, 1948, and was pending therein on that date. Judgment was entered in the action by the Passaic County Court on October 14, 1948.

The Courts of Common Pleas were treated in the following manner in the Constitution of 1947:

First, in the vesting of the judicial power under Article VI, Section I, paragraph 1 it was provided that it should be in a Supreme Court, a Superior Court, County Courts and inferior courts of limited jurisdiction.

Second, provision for the jurisdiction of the County Courts was made under Article VI, Section IV, paragraph 1, as follows:

"1. There shall be a County Court in each county, which shall have all the jurisdiction heretofore exercised by the Court of Common Pleas, Orphans' Court, Court of Oyer and Terminer, Court of Quarter Sessions, Court of Special Sessions and such other jurisdiction consistent with this Constitution as may be conferred by law."

Since the Court of Common Pleas was not expressly abolished by Article XI, Section IV, paragraph 3, but its jurisdiction preserved and made to form a part of the jurisdiction of the court to be known as the County Court, it was not necessary to spread its jurisdiction as it was with the Court of Errors and Appeals, the former Supreme Court, the Court of Chancery, the Prerogative Court and the Circuit Court, specifically referred to in paragraph 3 as the abolished category. Paragraph 4 of the same Article and section provided that: "when the Judicial Article of this Constitution takes effect, the jurisdiction, powers and functions of the Court of Common Pleas, Orphans Court, Court of Oyer and Terminer, Court of Quarter Sessions and Court of Special Sessions of each county, the judicial officers, clerks and employees thereof, and the causes pending therein and their files, shall be transferred to the County Court of the County."

By Article XI, Section I, paragraph 2, provision was made that "The Legislature shall enact all laws necessary to make this Constitution fully effective" and it is to be noted that by Article VI, Section IV, paragraph 4, "The jurisdiction, powers and functions of the County Courts and of the Judges of the County Courts may be altered by law as the public good may require." The Legislature enacted an implementing act (P. L. 1948, c. 365) to avoid confusion in making the transition, and incidentally prescribed the jurisdiction of the court, reiterating, for the present, like jurisdiction as was provided for in Article VI, Section IV, paragraph 1.

Provision for appeals from the County Court was made as follows:

Article VI, Section V, paragraph 2 provides that appeals from the County Courts may be taken to the Appellate Division of the Superior Court.

P. L. 1948, c. 365, § 22, p. 1475: "Any person aggrieved by an order or judgment of the County Court may appeal therefrom to the

Appellate Division of the Superior Court within the time and in the manner provided by the rules made and promulgated by the Supreme Court."

The following is significant:

1. *P. L.* 1948, *c.* 367 (in paragraph 2) refers to the transfer of causes "pending in the courts on September 15, 1948, according to the provisions of paragraph 8 of Section VI of Article XI of the Constitution;" and permits (in paragraph 13) appeals to the Supreme Court in certain cases therein specified. It gives no comfort to the appellant as the Common Pleas and County Courts are not mentioned in the Constitutional provision referred to therein.

2. This Act is limited (Section 12) to cases which were adjudicated prior to September 15, 1948.

The decision of this court in *Giordano v. City Commission of the City of Newark,* 2 *N. J.* 585 (1949), is not apposite, as it dealt specifically with pending prerogative writs.

The right of appeal in a cause pending in the Common Pleas Court on September 15, 1948, is, therefore, clearly and only defined in Article VI, Section V, paragraph 2 of the 1947 Constitution and in *P. L.* 1948, *c.* 365, *par.* 22 (*R. S.* 2:1B–22) and is limited to an appeal to the Appellate Division of the Superior Court, unless the cause falls within one of the categories set forth in Article VI, Section V, paragraph 1 of the 1947 Constitution and *Supreme Court Rule* 1:2–1. The present cause does not fall within one of said categories.

The appeal, as such, is accordingly dismissed. Article VI, Section V, paragraph 1(d) and *Supreme Court Rules* 1:2–1 and 1:5, however, permit a review by the Supreme Court on certification allowed by the Supreme Court in the latter's discretion. In the exercise of such discretion we have assumed jurisdiction in the present cause and have permitted the appeal to be heard on the merits.

The reversal of the trial court by the Appellate Division was put upon two grounds:

First: "that the court erred in refusing to consider the applicability of the regulations (of the Interstate Commerce Commission) in con-

nection with his determination of defendant's motion for involuntary dismissal"
and second, "that the court should have permitted plaintiff to offer his expert witness to testify as to the dangerous character of the bromine notwithstanding the fact that the offer was not made until the conclusion of the argument on the motion for an involuntary dismissal."

The Appellate Division concluded that the case had been tried on the theory that an inter-state shipment was involved and that the trial court erred in not considering the legal effect and applicability of the Interstate Commerce Regulations in his determination of the motion for involuntary dismissal.

While it is well settled that Federal laws and regulations adopted pursuant thereto and in accordance therewith must be judicially noticed by the State courts, *Lilly v. Grand Trunk Western Ry. Co.*, 317 U. S. 481 (1942) ; *Nickolopulos v. Lehrer*, 132 N. J. L. 461 (*E. & A.* 1945), the evidence establishes, however, that the shipment involved in the instant case was wholly intra-state in character. The plaintiff contends that the defendant stipulated at the trial that the shipment was inter-state in character. The stipulation relied upon is as follows:

"We can stipulate that bromine is used in the process of manufacturing cables and that the cables are manufactured and shipped to all parts of the world for use."

While the stipulation may be an acknowledgment by the defendant that it uses bromine in its manufacture of cables which may later find their way into inter-state commerce, it clearly does not establish that the shipment of the bromine in question from Paterson, New Jersey, to Jersey City, New Jersey, was a shipment in inter-state commerce.

As heretofore stated, however, the plaintiff predicated his case not only upon an alleged violation by the defendant of the regulations of the Interstate Commerce Commission but also in the alternative upon alleged negligence arising out of a violation by the defendant of a New Jersey statute, *R. S.* 21:1–44 which provides:

"No person shall deliver or cause to be delivered to any carrier of goods, any explosives, aqua fortis, oil of vitriol, phosphorous, friction matches or other explosive or dangerous material of any nature whatsoever under any false or deceptive invoice or description, nor without previously informing the agent of the carrier at the point of shipment of the true character of the shipment, nor without causing the containers to be visibly and plainly marked with the true name or description of the explosive or dangerous material. In addition to the penalty prescribed by section 21:1–50 of this title for violation of this section, the offender shall be civilly liable for all damage that may occur therefrom.

"The carrier may require any parcels suspected to contain goods of a dangerous character, to be opened to ascertain the fact and may refuse to accept for shipment goods not delivered in conformity with this section."

While bromine is specifically named as an explosive or dangerous article in the regulations of the Interstate Commerce Commission, it is not so specified by name in the New Jersey statute.

When the plaintiff was about to call the witness Randazzo whose testimony was in relation to the damage, the attorney for the defendant interposed and moved for judgment pursuant to *Rule* 3:41–2. The reason assigned was that no negligence of the defendant was proven and that the plaintiff "failed to present a factual case sufficient to present to the jury." Argument on the motion then ensued and it is not reported. The record indicates that the attorney for the plaintiff labored under the impression that the stipulation heretofore referred to was sufficient to create an inter-state shipment. Further, up to this point the attorney for the plaintiff was of the erroneous impression that the classification of bromine as explosive or dangerous material in the Interstate Commerce Commission regulations was evidence of "explosive or dangerous material" within the terms of the New Jersey statute. The plaintiff then realized the necessity of offering competent evidence of the alleged dangerous character of bromine in order to qualify it as an "explosive or dangerous material" within the New Jersey statute. Prior to any decision on the motion, the plaintiff requested permission to produce an expert witness to produce such testimony but the court denied the request on the ground that the plaintiff

had announced the completion of his presentation of evidence on all matters other than the matter of damages (*Rule* 3:41-2). Adjournment for the day then took place and at the following court session, before proceeding the court called upon the plaintiff in the following language: "Has counsel anything further to say about the case," thereupon the motion was made to place upon the stand a witness, "a chemist to prove that bromine is a dangerous material." It was denied. The court had been informed that the statute of limitations had run against the institution of a new action.

█ █ The order of proof is ordinarily subject to the control of the court and its rulings are held to be discretionary, *Trade Insurance Co. v. Barracliff*, 45 *N. J. L.* 543 (*E. & A.* 1883) at 545. The rule relating to the pertinent order of proof has been stated in *Abbotts Civil Jury Trials, 5th Ed.*, at *p.* 211, as follows:

> "95. Reopening the case. After either or both parties have rested, the admission or exclusion of further evidence is in the discretion of the judge, and this discretion extends to evidence offered during and after the argument and even after the cause has been submitted to the jury, but an exception may be taken, and if the ruling be an abuse of discretion relief may be had. * * *"

No reasons were assigned by the court in granting the motion of involuntary dismissal other than under *Rule* 3:41-2 that "upon the facts and the law the plaintiff has shown no right to relief." There was no mention in the pronouncement of the court as to whether it was an inter-state or intra-state transaction. Since we have held under the undisputed facts and applicable law it not to be an inter-state transaction, the proffered evidence was competent, relevant and essentially material.

█ The exercise of discretion has been defined in *Hoffman v. Maloratsky*, 112 *N. J. Eq.* 333 (*E. & A.* 1933) at 335, in an opinion by Mr. Justice Heher, as follows:

> "That exercise implies conscientious judgment, not arbitrary action. It takes account of the law and the particular circumstances of the case and is 'directed by the reason and conscience of the judge to a just result.'"

■ Under the circumstances it is clear that the court should have permitted the plaintiff the opportunity to offer the proposed witness for the purpose stated, notwithstanding the fact that the plaintiff's request was not made until the argument on the defendant's motion for dismissal. Under the particular circumstances of this case, the refusal by the trial court to honor the plaintiff's request was an abuse of discretion which injuriously affected the substantial rights of the plaintiff and as a result of which a new trial should be granted (*Supreme Court rule* 1:2–20(b)).

An additional question, relating to the construction of *R. S.* 21:1–44, *supra,* has been raised and will be considered. The plaintiff contends that the purpose and effect of the New Jersey statute is to create an absolute liability upon the part of any one violating the strict provision of the statute for all injuries resulting from such violation. We are unable to accept that view.

■ The plaintiff's case is predicated upon negligence. At common law a tort action could not be maintained absent some wrongful act. This rule is stated in *McBride v. Maryland Casualty Company,* 128 *N. J. L.* 64 (*E. & A.* 1941), wherein the following appears:

At page 67: "Appellant says that the point to be argued is whether the statute does in fact create a cause of action founded on absolute liability irrespective of fault. Appellant argues for the negative of this proposition and points out that our law is administered on the theory if a defendant is at fault he must pay damages, otherwise not; citing Chief Justice Beasley in *Marshall v. Welwood,* 38 *N. J. L.* 339, that: 'The common rule, quite institutional in its character, is that, in order to sustain an action for a tort, the damage complained of must have come from a wrongful act.'"

■ There was a duty at common law for persons having control of dangerous materials to exercise care commensurate with the risk of danger consistent with the dangerous character of the material involved. Whether or not the requisite care has been exercised in a particular situation is for the jury's determination. See *Hopper v. Charles Cooper & Co.,* 104 *N. J. L.* 93 (*E. & A.* 1927).

Thus at common law, it was necessary for an injured party to prove lack of due care on the part of a defendant to create a wrongful act upon which a claim could be maintained for the resultant injuries.

Statutes have been passed from time to time, which have established certain standards of conduct to prevent damages and consequent injury. Some statutes of this nature have created penalties for violation of the standards so established. The effect of such statutes is clearly set forth in *Evers v. Davis*, 86 *N. J. L.* 196 (*E. & A.* 1914), which is the leading case on the subject in this State. In that case the court said, at *page* 204:

"Upon common law principles, therefore, when the legislature has by public statute established a certain standard of conduct in order to prevent a danger that it foresaw, it has in this regard forewarned the 'ordinary prudent man' and through him the defendant in a civil action, whose conduct must always coincide with this common law criterion. Such danger, therefore, does not have to be proved by the plaintiff, since there is no longer room for a reasonable difference of opinion, for by his breach of the statute the defendant, through his common law conscience, is charged with knowledge that if injury ensues he will have acted at his peril."

\* \* \* \* \* \* \*

"\* \* \* whatever benefit the plaintiff in a civil action derives from such penal statutes is through the medium of the action of negligence; \* \* \*"

*At page* 205: "It is the necessary corollary of these views that the defendant in such action of negligence retains all of the defences appropriate to such action that are not affected by such penal statute which, as we have seen, operates conclusively upon the basis of the defendant's liability but not at all upon the factum of such liability. The operation of such a statute, in fine, is that the defendant's duty toward the plaintiff as affected by such statute takes the place of what would have been his common law duty if such statute had not been enacted, leaving the action of negligence in other respects unaffected by such statute. Thus a defendant, although he cannot be heard to say that it was not his duty to obey the statute, may show what he did in his effort to obey it, leaving it to the jury to say whether such effort was what a reasonably prudent person would have done in view of the statute."

That case has been consistently followed in numerous later cases in which the question has been raised.

██ ██ The statute involved in the present case, *R. S.* 21:1–44, creates a penalty for violation thereof and further provides that "the offender shall be civilly liable for all damage that may occur therefrom." The plaintiff contends that the quoted part of the statute creates an absolute liability. It is well established, however, that statutes are to be construed with reference to the common law and that a statute which is claimed to impose a duty or establish a right which was not recognized by the common law will be strictly interpreted to avoid such asserted change. To effectuate any change in the common law the legislative intent to do so must be clearly and plainly expressed. In this connection see *United States Casualty Company v. Hyrne,* 117 *N. J. L.* 547 (*E. & A.* 1937), wherein the court said at *page 552*:

"Statutory creation of rights, duties and obligations must be accomplished through the use of express language, directed toward that end, in order to be capable of judicial recognition. *Fidelity and Deposit Company of Maryland v. McClintic-Marshall Corp.,* 115 *N. J. Eq.* 470; affirmed, 117 *Id.* 440."

See also *Sutherland Statutory Construction, 3rd edition, par.* 6201 *et seq.*

See also 171 *A. L. R.* 909 *et seq.,* and cases therein cited to the effect that contributory negligence is a good defense in actions based on the violation of a statute relating to the sale of oils of an explosive character.

██ The application of the foregoing rules to the statute in question results in a determination that there is no expressed intent therein to create an absolute liability upon the part of a person who violates the provisions of the statute.

*McBride v. Maryland Casualty Co., supra,* relied upon by the plaintiff is clearly distinguishable. That case involved the violation of a statute, *R. S.* 21:3–1 *et seq.,* which specifically declared the sale, use, etc., of fireworks to be against the public health, safety and welfare of the people of this State, and absolutely prohibited the sale, use, etc., of fireworks, excepting upon a strict compliance with the conditions set forth in the statute. The statute, *inter alia,* required the posting of a

bond by any one obtaining a permit to display fireworks, in accordance with the statute, conditioned for the payment of all damages which might be caused by reason of such display. The gravamen of the complaint was a breach of contract based upon a bond, the language of which was clear and unequivocal. The court, in that case, decided that the required bond was, in effect, an accident insurance policy and that a recovery on the bond need not be predicated upon negligence. The statute involved in the *McBride case, supra,* clearly came within the rule, that "A statute will be deemed to abrogate the common law where its provisions are so inconsistent with and repugnant to the common law that both cannot be in force." 50 *Am. Jur., Statutes, par.* 345.

The statute involved in the present controversy, *R. S.* 21:1-44, cannot be said to be within the same category.

The judgment of the Appellate Division of the Superior Court is affirmed, for the reasons herein stated, and a trial *de novo* is directed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—Justice CASE—1.