Clifford BARNEY (Plaintiff), Appellant in No. 14,043,

v.

The STATEN ISLAND RAPID TRANSIT RAILWAY COMPANY, a Corporation (Defendant).

Clifford BARNEY (Plaintiff)

v.

JOHN H. GRACE COMPANY, Appellant in No. 14,044,
and Hunt Manufacturing Company (Defendants).

HUNT MANUFACTURING COMPANY (Third-Party Plaintiff)

v.

The STATEN ISLAND RAPID TRANSIT RAILWAY COMPANY, a Corporation (Third-Party Defendant).

Nos. 14043 and 14044.

United States Court of Appeals
Third Circuit.

Argued Dec. 6, 1962.

Decided April 8, 1963.

David Linett, New Brunswick, N. J. (Rothbard, Harris & Oxfeld, Perth Amboy, N. J., on the brief), for appellant Barney in No. 14043.

Phidias L. Pollis, Elizabeth, N. J., for appellant John H. Grace Co., in No. 14044.

John A. Willette, East Orange, N. J. (Stevenson & Willette, East Orange, N. J., on the brief), for defendant-appellant and cross-appellee, Hunt Mfg. Co.

H. Curtis Meanor, Jersey City, N. J. (Lamb, Langan & Blake, Arthur J. Blake, Jersey City, N. J., on the brief), for defendant-appellee, Staten Island Rapid Transit Ry. Co.

Before BIGGS, Chief Judge, and STALEY, Circuit Judge, and LEAHY, District Judge.

STALEY, Circuit Judge.

These are appeals from a judgment of the district court entered upon a jury verdict in favor of the defendants in a personal injury action brought by the plaintiff Clifford Barney. Barney appeals from that judgment and defendant, John H. Grace Company, cross appeals from the denial of its motion to dismiss the complaint as to it on the grounds of lack of jurisdiction.

Plaintiff, an employee of Boyle-Midway, Inc., of Cranford, New Jersey, was injured while climbing upon a railroad

tank car for the purpose of obtaining a sample of pine oil prior to unloading the oil. His employer was the consignee of the car which had been shipped by Hunt Manufacturing Company of Cleveland, Ohio, through the facilities of various railroads to the consignee's siding at Cranford. The car had been leased to Hunt by Grace, an Illinois partnership.

The uncontroverted evidence establishes that Barney was ascending the ladder which led to the dome of the car when he fell, suffering the injuries for which suit was brought. He testified that he had taken two or three steps when the ladder sprang back, causing him to fall to the ground. A fellow employee testified that after the accident he observed a break in the safety railing about twenty inches to the left of the ladder. The safety railing was bracketed to the inner side of the ladder. It was plaintiff's theory that the break in the railing caused the ladder to which it was attached to swing out, thereby throwing him to the ground.

Two suits, one against the Staten Island Rapid Transit Railway Company ("railroad"), which had brought the car to the siding, and the other against Grace and Hunt, were brought in a New Jersey state court. They were transferred to the district court on the basis of diversity jurisdiction and the provisions of 28 U.S.C. § 1441, and were consolidated for trial. At the pretrial hearing it was noted that the plaintiff was relying on the Safety Appliance Act, 45 U.S.C.A. §§ 1–46, as to his cause of action against the railroad. Nevertheless, the district court instructed the jury that a violation of the Act would only be evidence of negligence, and the railroad would not be liable unless the defective safety appliance could have been ascertained by a reasonable inspection. It is this instruction which Barney challenges in this court, contending that the district court should either have directed a verdict against the railroad or charged that the Act gave rise to absolute liability.

More particularly, the plaintiff concedes that, because his cause of action is based on diversity, the substantive law of New Jersey, including that pertaining to contributory negligence, is applicable. See Fairport, Painesville & Eastern Railroad Co. v. Meredith, 292 U.S. 589, 54 S.Ct. 826, 78 L.Ed. 1446 (1934). However, he asserts that the Safety Appliance Act defines the standard of care required of the railroad in the circumstances of this case, and that liability for a violation of the Act is absolute in the absence of any evidence that plaintiff was contributorily negligent. It is contended that no evidence of contributory negligence was adduced to present a jury question.

■ It can no longer be said that only railroad employees are within the protection of the Safety Appliance Act. Shields v. Atlantic Coast Line Railroad Co., 350 U.S. 318, 76 S.Ct. 386, 100 L.Ed. 364 (1956); Mazzucola v. Pennsylvania Railroad Co., 281 F.2d 267 (C.A.3, 1960). Indeed, it is conceded that plaintiff is a member of a class of persons for whose benefit the statute was enacted. But the railroad argues that the absolute liability resulting from a violation of the Act and a showing of causation obtains only when suit is brought by an employee under the Federal Employers Liability Act, 45 U.S.C.A. §§ 51–60. It is asserted that when jurisdiction is based on diversity of citizenship the common law of the state where the accident occurs is fully applicable. The railroad concedes that New Jersey would apply the Safety Appliance Act as an appropriate standard of conduct, but urges that under the law of that state a statutory violation does not give rise to civil liability unless the violation has been a negligent one.

■■ A similar argument was advanced in O'Donnell v. Elgin, Joliet & Eastern Railway Co., 338 U.S. 384, 70 S. Ct. 200, 94 L.Ed. 187 (1949), but was rejected. The Supreme Court noted that some states treat a statutory violation as some evidence of negligence, while others refer to it as prima facie evidence of negligence or as giving rise to the doctrine of res ipsa loquitur. But Mr. Justice Jackson noted that the Court "early swept all

issues of negligence out of cases under the Safety Appliance Act." 338 U.S. at 390, 70 S.Ct. at 204. It is true that suit in that case was brought by an employee under the F.E.L.A. Subsequently, however, in deciding Shields v. Atlantic Coast Line Railroad Co., the Court said, 350 U.S. at 325, 76 S.Ct. at 391:

> "There is no merit in respondent's contention that, since petitioner is not one of its employees, no duty is owed him under § 2 of the Act. Having been upon the dome running board for the purpose of unloading the car, he was a member of one class for whose benefit that device is a safety appliance under the statute. *As to him, the violation of the statute must therefore result in absolute liability.* \* \* \*" (Emphasis supplied.)

This unqualified language would appear to eviscerate the railroad's argument in the case at bar.[1]

■■ Moreover, an analysis of the relevant cases convinces us that New Jersey will impose absolute liability for a statutory violation proximately resulting in injury if there is a clear legislative intent to do so. Carlo v. Okonite-Callender Cable Co., 3 N.J. 253, 69 A.2d 734 (1949);[2] McBride v. Maryland Casualty Co., 128 N.J.L. 64, 23 A.2d 596, 138 A.L.R. 932 (1942). That Congress intended to prescribe such liability on behalf of those within the protection of the Safety Appliance Act is manifest from the O'Donnell and Shields cases, among others.

The railroad places great reliance on Jacobson v. New York, N. H. & H. Railroad Co., 206 F.2d 153 (C.A.1, 1953), aff'd per curiam, 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067 (1954). However, the issue in that case was whether, in the absence of federal jurisdiction based on diversity of citizenship, there is federal-question jurisdiction of a suit by one not an F.E.L.A. employee whose claim is premised on the Safety Appliance Act. Since that Act does not purport to confer a right of action, the question was answered in the negative.

■ The railroad next argues that the Safety Appliance Act is not applicable because the tank car was not being hauled or used on its line at the time of the accident.[3] It is asserted that the siding upon which the car was resting was owned by Barney's employer. The argument is without merit. Boyle-Midway's ownership of the siding is not signifi-

---

1. The precise basis for federal jurisdiction in Shields is not discussed either in the opinion of the Fifth Circuit, Atlantic Coast Line Railroad Co. v. Shields, 220 F.2d 242 (C.A.5, 1955), or that of the Supreme Court, while the opinion of the district court is not reported. Nor is the question mentioned in the briefs filed in the Supreme Court. Since the petitioner was not a railroad employee, jurisdiction did not rest upon the F.E.L.A. Because of this, coupled with the fact that the Safety Appliance Act does not purport to confer a right of action upon anyone, Urie v. Thompson, 337 U.S. 163, 188, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); Jacobson v. New York, N. H. & H. Railroad Co., 1 Cir., 206 F.2d 153 (1953), aff'd per curiam, 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067 (1954), we assume that jurisdiction was premised upon diversity of citizenship.

2. Although the court refused to impose absolute liability in that case, it indicated that it would have done so had there been a clear legislative intent to that effect. The other cases cited by the railroad, Michaels v. Brookchester, Inc., 26 N.J. 379, 140 A.2d 199 (1958); Daniels v. Brunton, 7 N.J. 102, 80 A.2d 547 (1951); and Evers v. Davis, 86 N.J.L. 196, 90 A. 677 (1914), are distinguishable on the same basis. That is, in none of them was the pertinent statute construed as manifesting a legislative intent to impose absolute civil liability in favor of one injured by a violation of it.

3. The relevant portion of the Safety Appliance Act provides:
> "§ 11. Safety appliances required for each car, when hand brakes may be omitted.
> "It shall be unlawful for any common carrier subject to the provisions of sections 11–16 of this title to haul, or permit to be hauled or used on its line, any car subject to the provisions of said sections not equipped with appliances provided for in said sections \* \* \*." 45 U.S.C.A. § 11.

cant, for it was the railroad which spotted the car at that point and removed it after the unloading operation. There is no evidence that anyone other than the railroad had control of the spotting and removal operation. To exclude a carrier from the provisions of the statute in these circumstances would be to emasculate its protective purpose. Rodgers v. Conemaugh & Black Lick Railroad Co., 137 F.Supp. 467 (W.D.Pa., 1956).

The railroad's reliance on Patton v. Baltimore & Ohio Railroad Co., 197 F.2d 732 (C.A.3, 1952), is misplaced. The issue there was which of two carriers would be responsible for a violation of the statute. We specifically distinguished cases, like this, in which only one railroad system is involved.

█ It is argued that if the Safety Appliance Act is construed as imposing absolute liability, Barney's claim under it, first asserted at the pretrial conference more than two years after his injury, is barred by the New Jersey statute of limitations. The argument is not tenable. The complaint specifically averred that the defective and unsafe condition of the tank car's ladder and handrail was the cause of the accident. Thus, the railroad was early put on notice as to the defect upon which Barney would rely. By invoking the Safety Appliance Act at

pretrial the plaintiff simply averred another manifestation of the condition referred to in the complaint. Puterman v. Pennsylvania Railroad Co., 148 F.Supp. 428 (E.D.N.Y., 1957); see also Oelfke v. Hudson & M. R. Co., 5 N.J.Misc. 2, 135 A. 659 (1926). The railroad itself rightfully contends that the statute does not purport to confer a right of action. Hence, it is difficult to see how Barney's reliance upon it can be said to have given rise to a new cause of action.

█ We now turn to the question of contributory negligence. As previously indicated, Barney concedes that this defense was available to the railroad. He contends, however, that the submission of this issue to the jury was improper because there was no evidence to support it. This submission is said to have been prejudicial not only to his cause against the railroad, but also to his common law negligence claim against the other defendants, Grace and Hunt.

The argument is not well taken. The plaintiff failed to specifically object to the charge on contributory negligence as required by Rule 51, Fed.R.Civ.P.[4] Indeed, there was no objection to the main charge on this point. The plaintiff merely objected generally to the requests to charge which had been submitted by the various defendants.[5] Though these

---

4. "Rule 51. Instructions to Jury: Objection

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury." 28 U.S.C.A., Rules of Civil Procedure, Rule 51.

5. After the charge of the court, counsel made the following objection:

"Mr. Seaman: We object to Hunt's requests to charge No. 7 and 8, and the charge requested by Staten Island and charges 1, 2, 5, 10, 11, 16. We object in the main charge to the form of the description of the duty and opportunity owed by Grace Company and by the Staten Island Railroad. That's all."

The requests pertinent to the issue of contributory negligence were Hunt's Nos. 7 and 8, and Staten Island's No. 11. They are:

Hunt's No. 7:

"Should you find that the defendant was guilty of negligence, but that the negligence of the plaintiff contributed to the happening of the accident then you must bring a verdict for the defendant regardless of how slight the contributory negligence of the plaintiff might have been."

Hunt's No. 8:

requests were incorporated in the court's instructions following its main charge, even as to them counsel failed to state the grounds of his objection. His failure to do so is particularly significant in view of co-counsel's prior observation after the conclusion of plaintiff's own case in chief that the issue of contributory negligence was for the jury.[6] Thus, the plaintiff did not comply with either the letter or spirit of Rule 51, and is precluded from raising this issue on appeal. Cf. Hargrave v. Wellman, 276 F.2d 948, 950 (C.A.9, 1960); American Fidelity & Casualty Co. v. Drexler, 220 F.2d 930, 934-935 (C.A.5, 1955); Dostal v. Baltimore & Ohio Railroad Co., 189 F.2d 352, 356 (C.A.3, 1951).

 We find no merit to plaintiff's contention that the district court committed reversible error in admitting a photograph of the tank car into evidence because there was no testimony that it represented the condition of the car at the time of the accident. Of course, the admission of a photograph into evidence is largely within the discretion of the trial judge. The witness, Stanley D. Grace, verified that it was an authentic reproduction of the car in question. When asked by the court as of what time the photograph represented the car, he replied that it would be any time from 1954 to the date of the trial. On the basis of this authentication, the district court did not abuse its discretion in admitting it into evidence although it did not depict the break in the handrail.

Our conclusion with respect to the applicability of the Safety Appliance Act to Barney's claim against the railroad requires that the judgment as to it be reversed and the cause remanded for a new trial. However, Barney's suit against Hunt and Grace was premised on common law negligence. Because we find no error in this aspect of the case, the judgment in their favor will be affirmed. Thus, we need not decide the issue raised by Grace that plaintiff failed to obtain jurisdiction over it.

That portion of the judgment of the district court entered in favor of defendants John H. Grace Co. and Hunt Manufacturing Company will be affirmed; that portion of the judgment entered in favor of defendant Staten Island Rapid Transit Railway Company will be reversed and the cause remanded for a new trial.

LEAHY, District Judge, concurring.

I agree with the decision of this Court affirming the district court's judgment in favor of defendants John H. Grace Co. and Hunt Manufacturing Company. I concur, too, with its judgment remanding the cause against the Staten Island Rapid Transit Company for a new trial—but only after some pause.

"One who sees or could have seen if he had looked, and has the faculties to understand the dangers to which he is exposed, is charged with a knowledge of them; and his failure to act on the knowledge as a prudent and cautious man would act under like circumstances is negligence which will defeat recovery."

Staten Island's No. 11:

"At the time of the accident, the plaintiff was under a duty to exercise that degree of care and caution that would be exercised under the same or similar circumstances by a reasonably prudent person. If you find that the plaintiff failed to exercise the degree of care required, and that such failure was a contributing proximate cause of the accident, then you must find the plaintiff guilty of contributory negligence and you must return a verdict for the defendant of no cause for action."

6. The following is a portion of the colloquy during the argument on Staten Island's motion to dismiss the complaint:

"Mr. Linett: I believe, your Honor, the Court may reasonably take the evidence most favorable to the plaintiff to show that he was injured when he climbed up on this ladder and the safety railing broke causing him to fall back.

"The Court: We must take his theory of the case.

"Mr. Linett: The evidence will support it. As far as contributory negligence, I certainly think that is a question for the jury.

"The Court: And I so ruled."

Staten Island is charged with violating the Federal Safety Appliance Act. That Act requires, *inter alia,* railroad cars engaged in interstate commerce to be furnished with prescribed safety equipment. Violation of the Act subjects an offending railroad to criminal penalties. Violation which is the proximate cause of an injury to a private party who, like Barney, was intended to be protected by the Act will ordinarily result in the application of strict or absolute liability being imposed upon the railroad. The legal problem posed by this case arises solely because this is a diversity case and thus fertile soil for that myriad of problems which inevitably bloom when federal courts sit as state courts, in limited fashion and for limited purposes. The majority of this Court lays heavy reliance on Shields v. Atlantic Coast Railroad Co., 350 U.S. 318, 325, 76 S.Ct. 386, 100 L.Ed. 364, also a diversity case,[7] and one in which language of the Supreme Court gives apparent support for the proposition that whatever state practice New Jersey may follow with respect to the imposition of absolute liability for the nonnegligent violation of its penal statutes, federal district courts sitting in New Jersey must apply absolute liability for nonnegligent violation of this statute. I am less convinced than the majority that Shields [by itself] can be taken as dispositive of the present question. At no point in the lengthy briefs filed before the Supreme Court in Shields (a case arising in Alabama) and, indeed, at no point in the decision of the Circuit Court or the Supreme Court in Shields, is any discussion found of Alabama law or of Erie R. Co., v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, or its accompanying train of problems. Whatever the reason for the omission, I cannot read Shields as eviscerating the railroad's argument here.

I would decide this case without too much reliance on Shields and without resolving the troublesome question of what New Jersey state law is with respect to the imposition of absolute liability in a case such as the present. In Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165, Chief Justice Stone stated:

"It is familiar doctrine that the prohibition of a federal statute may not be set at naught, or its benefits denied, by state statutes or state common law rules. In such a case our decision is not controlled by Erie R. Co. v. Tompkins, * * * Tl re we followed state law because it was the law to be applied in the federal courts. But the doctrine of that case is inapplicable to those areas of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law. * * * *When a federal statute condemns an act as unlawful, the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted. To the federal statute and policy, conflicting state law and policy must yield."* [8]

(Italics added)

I think no more need be said. I concur with the majority.

---

7. See n. 1, Majority Opinion, supra.

8. See, 317 U.S. 176, 63 S.Ct. 173; 1 Moore, Fed.Prac. § 0.324.