**HARTLEY v. BALTIMORE & O. R. CO.**
**HARTLEY v. READING CO.**

Nos. 10480, 10481.

United States Court of Appeals
Third Circuit.

Argued Nov. 20, 1951.

Decided Feb. 26, 1952.

Rehearing Denied March 15, 1952.

---

4. Morgan v. Sun Oil Co., 5 Cir., 109 F.2d 178.

5. Mutual Life Ins. Co. v. Daigle, 5 Cir., 142 F.2d 1000; Maryland Cas. Co. v. Reid, 5 Cir., 76 F.2d 30.

562

Howard Burtt, Philadelphia, Pa. (Guckes, Shrader & Burtt, Philadelphia, Pa., on the brief), for appellant Baltimore & O. R. Co.

John R. McConnell, Philadelphia, Pa. (Morgan, Lewis & Bockius, Philadelphia, Pa., on the brief), for appellant Reading Co.

Milford J. Meyer, Philadelphia, Pa. (Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

These cases arose out of a single accident to appellee. They were tried together and resulted in a judgment against each defendant for $29,000. That sum, it was agreed by all concerned, was assessed by the jury as appellee's total recovery. Both defendants appealed.

The Reading Belmont yard, Philadelphia, Pa., is an interchange point. Just east of it the Baltimore and Ohio tracks join the Reading tracks. Cars being delivered by Baltimore and Ohio to Reading are brought by Baltimore and Ohio engines to the yard for inspection and acceptance by Reading. At about 7:15 A.M., June 22, 1949, appellee Hartley, a Reading Company car inspector, was working in the yard when a Baltimore and Ohio train came to the junction point. On arrival the train conductor telephoned the Reading yardmaster who told him to place the cars at a specified location on track #3. The train moved into the yard but before it reached its designated location it made two stops because of yard conditions. The Baltimore and Ohio conductor said that these were at the orders of the yardmaster. Appellee testified that once the train passed the junction it was under the supervision of Reading. We are not concerned with the first stop. Hartley said that at the second temporary stop, he and his partner, as rear of the train inspectors, locked the switch behind the train and put out a blue flag. After that he waited ten minutes or more to allow the upper end inspector to put out a similar flag in front of the train and to lock the upper switch. He said that in the interval there was no warning of impending movement of the train. He then boarded the train at its last car. His instructions were that as soon as he boarded a train for inspection he was to apply the air brake by opening an angle valve on one of the cars. Such operation affected all the cars and prevented movement of the train. Hartley testified that he was unable to open the valve at the rear end of the last car because its handle had been broken off. He made no endeavor to open the valve on any other car. He states that he went to the top of the last car and was checking its ice bunkers " * * * when the train pulled from in under me and over I went."

In No. 10,480 the appellant, Baltimore and Ohio Railroad Company, urges that reversible error was committed by the court below in charging the jury that, as against the Baltimore and Ohio, contributory negligence of the plaintiff, if any existed, " * * * would be no defense in whole or in part to his action, and he would be entitled to recover full damages for his injuries." The court did so charge as the result of a request on behalf of the plaintiff which construed the Proviso to Section 3 of the Employers' Liability Act [1]

1. Section 3 of the Federal Employers' Liability Act reads:
"Contributory negligence; diminution of damages
"In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his

to mean that elimination of the defense of contributory negligence in a suit under that Act based on the violation of any statute enacted for the safety of employees is extended to apply to an action under the Safety Appliance Act[2] against a third party common carrier railroad, in this instance the Baltimore and Ohio. Actually the Proviso is expressly confined to an employee's suit against an employer as sanctioned by the Act. Section 3 is an integral part of the Federal Employers' Liability Act. The phrase in the section "such common carrier by railroad" refers to the employer railroad mentioned in Sections 1 and 2 of the Act.[3] The section goes on to say that contributory negligence of the employee does not bar a recovery but does diminish the damages proportionately and then follows the Proviso, "That no *such* employee * * * shall be held to have been guilty of contributory negligence in any case where the violation by *such* common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." (Emphasis supplied).

The Supreme Court categorically supports the above view. In Fairport, P. & E. Railroad Co. v. Meredith, 292 U.S. 589, 598, 54 S.Ct. 826, 829, 78 L.Ed. 1446, speaking of the Safety Appliance Act it said: "The act does not affect the defense of contributory negligence, * * *." And see Moore v. Chesapeake & O. Railway Co., 291 U.S. 205, 215, 54 S.Ct. 402, 78 L.Ed. 755. The express exception and the only exception is where, as above stated, an employee is suing his employer under the Federal Employers' Liability Act and violation of a safety statute enacted for the benefit of employees contributed to the injury. If, as appellee contends, conditions have come into existence which call for a change in the rule that is not a matter for this court but for the Congress.

The first count of the complaint against the Baltimore and Ohio was under the Federal Employers' Liability Act and alleged joint employment of Hartley by the Baltimore and Ohio and Reading. The second count seems intended to be a diversity action for negligence though it repeats paragraph 2 of the first count which asserts that the Reading was a joint employer of plaintiff. In any event the case against Baltimore and Ohio was tried and decided as a diversity suit and not under the Federal Employers' Liability Act. The only negligence finally pressed against Baltimore and Ohio was its alleged violation of the Federal Safety Appliance Act which as we have seen does not exclude the defense of contributory negligence. The court expressly charged that Hartley was not an employee of the Baltimore and Ohio and that the Federal Employers' Liability Act had no application to his claim against that railroad. The applicable state law was that of Pennsylvania and under that law contributory negligence is a valid defense though there has been a violation of a statute enacted for the safety of employees. See Price v. New Castle Refractories Company, 332 Pa. 507, 514, 3 A.2d 418.

There was evidence of Hartley's contributory negligence. At the time of the accident a certain "Blue Flag Circular" admittedly governed Reading car inspection safety precautions. This required: "Before performing work of any kind requiring employees to go under or between equipment, workmen engaged in doing the work must place a standard metal blue flag by day and a blue light by night a sufficient distance from each end of the equipment or near the clearance point at each end of the track, to insure full protection to those engaged in doing the work."

---

death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided*, That no such employee who may be injured or killed shall be held to have been guilty of contributory neg-

ligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 35 Stat. 66, 45 U.S.C.A. § 53.

2. 45 U.S.C.A. § 1 et seq.

3. 45 U.S.C.A. § 51 et seq.

Hartley was familiar with the rule and, it will be remembered, had set out a rear blue flag. He had begun his work on the train without first ascertaining that the head end flag had been placed. He claimed that waiting a ten minute interval for the placing of the front flag without checking that placement was sufficient under Reading practice. The conflicting testimony was for the jury on the question of credibility. Hartley's conduct with regard to the angle valve was also evidence of contributory negligence to be decided by the jury. His instructions were to open such a valve as soon as he had boarded the train in order to insure protection against the cars moving. He says that he did not do this because the valve on the last car was broken off. He fails to explain why he did not open the one on the car ahead or on any other car.

■ The final argument against appellant's contention that elimination of its defense of contributory negligence was reversible error is that the jury by its verdicts determined that Hartley had not been guilty of contributory negligence. This conclusion derives from the proposition that the court instructed the jury in the Reading case that if Hartley was himself found to have been negligent then in the event of a recovery by him on the ground of Reading's fault, his verdict must be reduced proportionately with the degree of his negligence. And, says Hartley, since his verdict against Reading was in the same amount as the verdict in the Baltimore and Ohio suit where contributory negligence was excluded it must follow that the jury had found him free from blame in the accident.

These cases, though tried together for convenience, were separate causes of action. The claim against the Baltimore and Ohio resolved into an ordinary negligence suit. It was in the federal court because of the diverse citizenship of the parties though as it went to the jury the only negligence suggested was alleged violation of the Federal Safety Appliance Act. In that action the defense of assumption of risk was barred by the Safety Appliance Act. The defense of contributory negligence was erroneously excluded by the trial judge. If it had been allowed, as it should have been, and had been upheld, it would have defeated the claim. The Reading complaint was under the Federal Employers' Liability Act which excluded the defense of assumption of risk and allowed contributory negligence as a defense only in mitigation of damages.

The plaintiff was entitled to his full day in court in both these suits as was each defendant. A laudable effort was made by everyone concerned to save time and expense by disposing of the two actions at one time but, as it worked out in this particular instance, it was unsuccessful. And we do not think that the error involved was cured by the verdicts.

The charge consisted primarily of reading the points submitted by counsel. Early in its course, the court read the Reading contributory negligence point to the effect that if the jury found plaintiff guilty of contributory negligence it must reduce his damages proportionately if there was a verdict in his favor. There was no reference in the point to the Reading suit or any attempt to confine the legal principle to that action. The court went on to explain and approve the point but did not mention that it applied solely to the Reading litigation. Later, the court directly charged that contributory negligence was no defense in the Baltimore and Ohio case and, as to the Reading suit, stated specifically that contributory negligence of the plaintiff must result in proportional diminishment of his damages should he obtain a verdict.

Had the issue of contributory negligence in the two suits been left that way with the early confusing statement regarding it having been clarified, the jury could be said to have been given understandable instructions that, 1. contributory negligence was no defense in the Baltimore and Ohio suit; 2. if the plaintiff was found guilty of such negligence in the Reading case and if there was a verdict in his favor that verdict should be reduced by the percentage of contributory negligence found. However, after the charge had been concluded, counsel for the plaintiff in the presence of the jury, said to the court: *"If they [the jury]*

*should find a verdict in favor of the plaintiff and against each defendant, then, let us say they agree that the damages suffered by Mr. Hartley were $2.00—then their verdict would be against each defendant for $2.00, and not against each defendant for $1.00."* (Emphasis supplied.) Following that statement there was a discussion between the court, Mr. Meyer, attorney for the plaintiff, and Mr. McConnell, attorney for Reading. This reads as follows:

"The Court: Suppose they are going to find for the plaintiff, and assuming for the purposes of this discussion, $10.00, they then bring in a verdict of $10 against the Reading and $10 against the B. and O.?

"Mr. Meyer: *If they decide that they are both liable then they would have to bring in a verdict of $10 against the Reading and $10 against the B. and O., but we can only collect $10 from either one or both.*

"The Court: Is that satisfactory?

"Mr. McConnell: That is satisfactory—[4]

"The Court: *Suppose they want to exonerate one of the railroads?*

"Mr. Meyer: *Then they would find $10 against the one railroad and exonerate the other."* (Emphasis supplied.)

The court then said to the jury: *"Do you understand that, members of the jury? If counsel want it that way, all right."* (Emphasis supplied.) Other than an admonition not to discuss the case at lunch and a suggestion as to their attitude in the jury room those were the final words of the court to the jurors.

From all of the above it is clear that as these cases were ultimately turned over to the jury, that body, in the event of a finding for the plaintiff against both defendants, had no alternative but to assess verdicts against them in equal amounts. Though undoubtedly never so intended the necessary effect of the incident was to give the jury the definite impression that, with the court's approval, all of the lawyers had agreed if there were to be verdicts against both defendants the verdicts should

be in the same amounts and if there was to be a verdict against only one defendant that verdict should be for the same amount no matter which defendant was held liable. Any reduction for contributory negligence in a verdict against Reading, if there was to be a verdict against Reading, was utterly eliminated from the jury's consideration. The jury was categorically told that if it found a plaintiff's verdict that verdict was to be in the one amount against either defendant or both. The verdicts rendered were in strict accord with that instruction. It is impossible to infer from those bare verdicts alone, and there is nothing else, that it was the jury's considered determination that Hartley was not guilty of contributory negligence.

While the above fully disposes of appellee's theory that the verdicts themselves spell out a finding of no negligence on the part of the plaintiff, there are other cogent grounds for rejecting that thought. The two cases were separate causes of action; different defendants, different rights and responsibilities. Baltimore and Ohio was wrongfully deprived of what would have been an absolute defense if accepted by the jury. The removal of that defense from the Baltimore and Ohio action might have had a profound effect on the jury's conclusion as to the amount awarded in the Reading suit. By that we mean that the jury could have received the impression that the question of contributory negligence was of little or no importance in connection with this accident having already been thrown out of the Baltimore and Ohio suit. The presentation of the contributory negligence in the Baltimore and Ohio case with summation thereon and a proper charge in connection therewith could have produced a radically different verdict. The claim against Reading was also finally given to the jury with the defense of contributory negligence for all practical purposes improperly eliminated. The Reading suit was entirely separate from the Baltimore and Ohio case. The two matters merely happened to be tried at the same

4. Counsel for Baltimore and Ohio is not expressly shown by the record as agreeing but there was no objection by him nor is there any indication on this appeal that he did not agree to this arrangement.

time for convenience. Those facts offer no valid excuse for affirming the judgment against Baltimore and Ohio on the supposition that the Reading verdict might possibly indicate the jury's decision on the question of whether Hartley was guilty of contributory negligence. We are satisfied that the judgment against the Baltimore and Ohio must be set aside.

### Reading Case

Appellant Reading urges that the undisputed evidence shows that the plaintiff's injuries were in part due to the Baltimore and Ohio's violation of the Safety Appliance Act and that the sole additional cause of the injuries was the negligence of the employees of the Baltimore and Ohio. The evidence above outlined reveals that both these contentions were fact problems for the jury.

With reference to the angle valve, Reading urges that it is not disputed that appellee's injuries were due in part to the Baltimore and Ohio's violation of the Safety Appliance Act. There is a little bit more to the problem than that for there is no evidence that Hartley's instructions were to open the particular angle valve with the broken handle and that, being unable to do so, he was still obliged to board the train. The evidence is that his orders were to open an angle valve prior to inspecting the train. The evidence further is that there were angle valves apparently on all of the other cars, none of which Hartley attempted to open. As to other evidence of negligence there are questions as to whether, under the facts, Reading had provided Hartley with a safe place to work, whether there was negligence in connection with notice to Hartley of movement of the train, whether there was negligence in connection with Reading's instructions to Hartley as to boarding such train, and with reference to the operation of the train itself within the Belmont yard. It will be recalled that the Baltimore and Ohio conductor and Hartley, himself, say that the movements of the train in the yard were under the control and orders of the Reading yard-master. We think that the question as to whether or not Reading was guilty of negligence resulting in plaintiff's injuries was rightfully sent to the jury.

Reading argues that should the judgment against Baltimore and Ohio be set aside it might be forced to pay the plaintiff the full amount of his damages instead of half as the jury had intended. There is substantial merit in the position taken but, of itself, it would not justify a flat reversal and a new trial on the merits as to Reading.

We do think, however, that Reading's real situation cuts deeper. As we have already outlined at some length, the jury eventually received this case with the contributory negligence defense for all practical purposes removed as an issue. Had the jury been allowed the opportunity to consider it, what effect, if any, it would have had upon the amount of the verdict against Reading we are unable to say. But at the very least Reading was entitled to have that defense seriously and thoroughly passed upon. Whether it was so examined and determined is open to grave question. The fact that the attorney for Reading agreed to the suggestion of plaintiff's attorney regarding the method in which the jury was to render its verdicts in the event plaintiff was awarded a verdict against either defendant or both does not satisfactorily answer the problem. There is not the slightest inference in the record that the attorney meant to waive Reading's defense of contributory negligence. It was his request on the very point that the judge had read to the jury early in his charge. Because of the generally unsatisfactory trial conditions revealed by the record as developing after the charge proper we have of our own motion examined carefully that closing episode of the trial. We conclude that by reason of it Reading was inadvertently deprived of its defense of contributory negligence and that therefore this judgment also cannot be allowed to stand.

The judgments in both these cases will be reversed and the cases remanded for new trials on the merits.