**Ronald L. CRANE, Appellant,**

v.

**CEDAR RAPIDS AND IOWA CITY RAIL-WAY COMPANY, a Corporation, Appellee.**

**No. 52991.**

Supreme Court of Iowa.

Sept. 5, 1968.

Arthur O. Leff, Iowa City, and Halloran & Alfveby, Minneapolis, Minn., for appellant.

John F. Gaston, Jr., Ted P. Lewis, and Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellee.

STUART, Justice.

Plaintiff brought this action in the Linn County District Court to recover damages for personal injuries received when he fell from a runaway railroad box car which he was attempting to stop by applying the brakes. The railroad car had been delivered to Cargill, Inc. by defendant. Plaintiff, an employee of Cargill was engaged in spotting cars for his employer at the time of the accident. He sought to impose liability on defendant by alleging it failed to have the cars equipped with couplers coupling automatically by impact as required by 45 U.S.C.A., § 2. The case was submitted to the jury which returned a verdict for defendant. Plaintiff has appealed.

I. Plaintiff's first three errors relate to instructions given or requested instructions refused and depend upon his claim failure of the railroad equipment to perform as required by the Safety Appliance Acts (S.A.A.) 45 U.S.C.A. §§ 1–7, is in itself an actionable wrong which results in absolute liability and contributory negligence is no defense. It is our opinion the defense of contributory negligence was available to defendant and the instructions in this regard were correct.

It is well settled the duty imposed on the railroads by the Safety Appliance

Acts is "an absolute one and the carrier is not excused by any showing of care, however assiduous". Brady v. Terminal R.R. Assn., 303 U.S. 10, 15, 58 S.Ct. 426, 429, 82 L.Ed. 614, (1937) and citations.

■ It is also well settled " 'the nature of the duty imposed by a statute and the benefits resulting from its performance' usually determine what persons are entitled to invoke its protection". Brady v. Terminal R.R. Assn., supra, loc. cit. 14, 58 S.Ct. loc. cit. 429. The trial court ruled plaintiff was within the class of persons intended to be protected by the S.A.A. This holding is supported by the authorities and is not challenged here. Boyer v. Atchison, Topeka and Santa Fe Railway Co., 38 Ill.2d 31, 230 N.E.2d 173; Jacobson v. New York, N. H. & H. R. Co., 1 Cir., 206 F.2d 153; Shields v. Atlantic Coast Line R. Co., 350 U.S. 318, 76 S.Ct. 386, 100 L.Ed. 364; Brady v. Terminal R.R. Assn., supra; Fairport R. Co. v. Meredith, 292 U.S. 589, 54 S.Ct. 826, 78 L.Ed. 1446.

■ Employees of carriers are given the further protection of the Federal Employers' Liability Act, (F.E.L.A.). 45 U.S. C.A. Chapter 2. Employees may bring action for personal injury in either the federal or state courts. 45 U.S.C.A. § 56. In actions under F.E.L.A. based on violation of S.A.A. the carrier may not invoke assumption of risk or contributory negligence as a defense. 45 U.S.C.A. §§ 53–54.

■ Crane as a nonemployee is not entitled to the benefits of the F.E.L.A. and, as the S.A.A. does not provide a remedy, he brought his action in the state court subject to state law.

■ An examination of the cases convinces us the Safety Appliance Acts impose an absolute duty on the railroad carrier to equip its cars as required by statute and failure of the safety appliance to so operate is negligence per se. In the absence of statutory state law to the contrary, the injured party is required to exercise due care for his own safety and under Iowa law his contributory negligence is a proper defense to be submitted to the jury.

The U.S. Supreme Court first considered the question in Schlemmer v. Buffalo R. & P. Ry. Co., 220 U.S. 590, 31 S.Ct. 561, 55 L. Ed. 596 (1910). There the Pennsylvania trial court submitted the case to the jury under an allegation that defendant had violated 45 U.S.C.A. § 2 by failing to have automatic couplers. The question of contributory negligence was included. The court pointed out that Congress had expressly provided the employee should not be deemed to have assumed the risk "[b]ut there is nothing in the statute absolving the employee from the duty of using ordinary care to protect himself from injury in the use of the car with the appliances actually furnished". 220 U.S. at 596, 31 S. Ct. at 563.

"In the absence of legislation at the time of the injury complained of, taking away the defense of contributory negligence, it continued to exist, * * *." 220 U.S. at 597, 31 S.Ct. at 563.

"In view of this record we cannot say that the court, in denying a recovery to the plaintiff, upon the ground of contributory negligence of the deceased, denied to her any rights secured by the Federal statute." 220 U.S. at 598, 31 S.Ct. at 564.

In Fairport P. & E. R. Co. v. Meredith, 292 U.S. 589, 54 S.Ct. 826, 78 L.Ed. 1446 (1933), the Supreme Court held the duty imposed by the Safety Appliance Acts "in respect of power controlled brakes extends to and includes travelers at railway-highway crossings." 292 U.S. at 597, 54 S.Ct. at 829.

" * * * [T]he trial court instructed the jury, in effect, that, if the violation of the federal act resulted proximately or immediately in the injury complained of, the railroad company was liable. But the jury was also told that, if respondent was guilty of contributory negligence, she could not recover notwithstanding the neg-

ligence of petitioner." 292 U.S. at 593, 54 S.Ct. at 827.

The court said: "The federal Safety Appliance Act, as we already have said and this court repeatedly has ruled, imposes absolute duties upon interstate railway carriers and thereby creates correlative rights in favor of such injured persons as come within its purview; but the right to enforce the liability which arises from the breach of duty is derived from the principles of the common law. The act does not affect the defense of contributory negligence, and, since the case comes here from a state court, the validity of that defense must be determined in accordance with applicable state law." 292 U.S. at 598, 54 S.Ct. at 829.

In 1934 the U.S. Supreme Court reaffirmed its position with regard to the defense of contributory negligence in Moore v. Chesapeake & Ohio Ry. Co., 291 U.S. 205, 216, 54 S.Ct. 402, 78 L.Ed. 755, and Gilvary v. Cuyahoga Valley Ry. Co., 292 U.S. 57, 61, 54 S.Ct. 573, 78 L.Ed. 1123.

In Tipton v. Atchison, Topeka and Santa Fe Ry. Co., 298 U.S. 141, 146, 56 S.Ct. 715, 80 L.Ed. 1091 (1935), the court held California was at liberty to afford any appropriate remedy for breach of the duty imposed by the S.A.A. and could limit plaintiff's recovery to workmen's compensation. The court said: "The Safety Appliance Acts impose an absolute duty upon an employer * * *. The absolute duty imposed necessarily supersedes the common-law duty of the employer. But, unlike the Federal Employers' Liability Act, which gives a right of action for negligence, the Safety Appliance Acts leave the nature and the incidents of the remedy to the law of the states. The Safety Appliance Acts modify the enforcement, by civil action, of the employee's common-law right in only one aspect, namely, by withdrawing the defense of assumption of risk. They do not touch the common or statute law of a state governing venue, limitations, contributory negligence, or recovery for

death by wrongful act." 298 U.S. at 146, 56 S.Ct. at 716.

The U.S. Supreme Court has not overruled or modified these clear holdings. Plaintiff cites more recent cases which he claims show an inclination on the part of the court to treat absolute duty and absolute liability the same.

In Shields v. Atlantic Coast Line R. Co., 350 U.S. 318, 76 S.Ct. 386, 100 L.Ed. 364 (1955), a nonemployee sought damages for personal injuries sustained when a platform near the dome on a tank car broke causing him to fall. The main question was whether this platform was a safety appliance within the S.A.A. The only comment pertinent to our problem here is found in the last paragraph of the opinion. The court said: "There is no merit in respondent's contention that, since petitioner is not one of its employees, no duty is owed him under § 2 of the Act. Having been upon the dome running board for the purpose of unloading the car, he was a member of one class for whose benefit that device is a safety appliance under the statute. As to him, the violation of the statute must therefore result in absolute liability. Coray v. Southern Pacific Co., 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208; Brady v. Terminal Railroad Assn., 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed. 614; Fairport, P. & E. R. Co. v. Meredith, 292 U.S. 589, 54 S.Ct. 826, 78 L.Ed. 1446; Louisville & N. R. Co. v. Layton, 243 U.S. 617, 37 S.Ct. 456, 61 L.Ed. 931." 350 U.S. at 325, 76 S.Ct. [386] at 391.

The authorities cited do not support the comment on absolute liability. The issue of contributory negligence was not in the case and was not mentioned in the opinion.

Three F.E.L.A. cases, Carter v. Atlanta & St. Andrews Bay R. Co., 338 U.S. 430, 70 S.Ct. 226, 94 L.Ed. 236 (1949); O'Donnell v. Elgin J. & E. R. Co., 338 U.S. 384, 70 S.Ct. 200, 94 L.Ed. 187 (1949); and Affolder v. N. Y. C. & St. L. R. Co., 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683 (1950); con-

tain language which tends to support plaintiff's position, but the issue of contributory negligence was not mentioned.

Whether these cases are harbingers of a change in position by the U. S. Supreme Court or merely imprecise language which frequently appears in dictum, we do not know. The federal statutes have not been changed. The reasons for holding a non-employee's action is governed by applicable state law seem sound and still exist. In any event, we do not consider it our prerogative to place an interpretation on the federal statutes which differs from that of the U. S. Supreme Court. No one claims contributory negligence is not a defense under Iowa law.

Other federal courts have consistently held contributory negligence is available as a defense in S.A.A. cases if the state law so provides.

In Hartley v. Baltimore & O. R. Co., 3 Cir., 194 F.2d 560, 563 (1952), the court said: "The express exception and the only exception is where, as above stated, an employee is suing his employer under the Federal Employers' Liability Act and violation of a safety statute enacted for the benefit of employees contributed to the injury. * * *"

"In any event the case against Baltimore and Ohio was tried and decided as a diversity suit and not under the Federal Employers' Liability Act. The only negligence finally pressed against Baltimore and Ohio was its alleged violation of the Federal Safety Appliance Act which as we have seen does not exclude the defense of contributory negligence. The court expressly charged that Hartley was not an employee of the Baltimore and Ohio and that the Federal Employers' Liability Act had no application to his claim against that railroad. The applicable state law was that of Pennsylvania and under that law contributory negligence is a valid defense though there has been a violation of a statute enacted for the safety of employees." 194 F.2d at 563.

In Jacobson v. New York, N. H. & H. R. Co., 1 Cir., 206 F.2d 153, 157, the court said: "But it is abundantly clear that the federal courts have not, as a matter of federal common law, developed a private right of action for damages for personal injuries resulting from a breach of the Safety Appliance Acts, in favor of persons not entitled to sue under the provisions of the Employers' Liability Acts."

"It follows, therefore, that if an action is brought in a state court by a passenger or other person not entitled to sue under the Employers' Liability Acts to recover damages for personal injury resulting from a violation of the Safety Appliance Acts, issues bearing upon the right to recover, relating, for example, to common law doctrines of last clear chance, the defense of contributory negligence, or proximate cause, depend upon the local law of the state where the injury occurred, and do not present federal questions reviewable by the Supreme Court under 28 U.S.C. § 1257(3)." 206 F.2d at 157.

"It follows also, that if such an action is brought in or removed to a federal district court on grounds of diversity of citizenship, the substantive law to be applied, in determining the right to recover, is the statutory or common law of the state." 206 F.2d at 157.

In Hunter v. Missouri-Kansas-Texas Railroad Company, 276 F.Supp. 936, 943, (1967), the U. S. District Court in Oklahoma said: " * * * where the plaintiff is not an employee of the Katy Railroad, that the Katy Railroad may assert the defense of contributory negligence with reference to its alleged violation of the Federal Safety Appliance Act and if the plaintiff is guilty of contributory negligence he may not recover against the Katy Railroad for either any common law negligence on its part or any violation by it of a provision of the Federal Safety Appliance Act."

"In view of this finding and the state of the law to the effect that this defense is available in this case to Katy Railroad un-

der both counts against it, namely, a violation of the Federal Safety Appliance Act and common law negligence in delivering a defective car to the Halliburton Company siding for unloading by its employees, the Court finds and concludes that the plaintiff is, therefore, not entitled to recover herein against Katy Railroad by virtue of said contributory negligence on his part as found by the court under the evidence." 276 F.Supp. at 944.

Plaintiff has cited no cases from any courts which specifically considered the question of contributory negligence and held differently from the U. S. Supreme Court. Boyer v. Atchison, Topeka and Santa Fe Ry. Co., 38 Ill.2d 31, 230 N.E. 2d 173, 176, (1967), is the most nearly in point. There the Illinois court affirmed judgment on the pleadings on the question of liability in a suit by an nonemployee under the S.A.A. The court said: "Thus, it is apparent that a breach of the Safety Appliance Act does give rise to a civil cause of action which is separate from any cause of action based on negligence and that absolute liability for such breach is imposed on the violator."

Contributory negligence was not an issue. The question was whether the employee was in the protected class. The same year a federal court in Hunter v. Missouri-Kansas-Texas Railroad Company, supra, specifically confirmed the past precedents.

Louisell and Anderson in an article in 18 Law and Contemporary Problems 281–295 argues persuasively that a railroad employee and the employee of a shipper injured while setting a defective hand brake should not be treated differently. The obvious answer is that the federal statutes as interpreted by the U. S. Supreme Court make such distinction. "If, * * * conditions have come into existence which call for a change in the rule that is not a matter for this court but for the Congress."

Hartley v. Baltimore & O. R. Co., 194 F. 2d 560, 563.

■ We do not believe the U. S. Supreme Court has altered its interpretation of the Federal Safety Appliance Acts, 45 U.S.C.A. Chapter 1 and the Federal Employer's Liability Act, 45 U.S.C.A. Chapter 2. Until they do or until Congress amends the statutes, we will hold with existing precedents. The trial court correctly submitted the question of plaintiff's contributory negligence to the jury. There is no merit in plaintiff's first three assignments of error.

II. Plaintiff's next assignment of error is founded upon the trial court's exclusion of certain evidence. In order to understand the significance of the excluded testimony it is necessary to briefly describe circumstances surrounding the accident.

Crane was employed by Cargill, Inc. as a meal house helper. He helped move railroad cars between the meal house where they were loaded and the elevator and scales to the north where they were weighed before and after loading. The track between the meal house and the scales was slightly lower than at either of these facilities. The cars were moved by cables attached to electric winches. Because of the saucer effect, gravity aided the movement. Three Cargill employees testified that prior to the date of the accident they had seen cars running free from the meal house to the elevator roll all the way to the elevator and partly on the scale.

On the day of the accident, Crane and a fellow employee moved the two north cars from a string of six cars located south of the meal house to the scales to be weighed before loading. The brake had been set on the third car and the pin lifted on the coupler to release the two cars from the chain.

After weighing they were winched back and supposedly coupled to the original

group before the first car was loaded. After the first car was filled, Harris instructed Crane to get on top of the third car and work the brake in a manner to spot the second car in the chain for loading. Harris attached the winch to the second car. Although Crane and Harris said the second and third cars appeared to be coupled together, the first two cars "took off quite rapidly" from the standing string back toward the elevator and scales when Harris started the winch.

Crane reset the brake on the third car, climbed down the ladder, ran and caught up with the two runaway cars after they had traveled about a length and a half, climbed up on the south end of the second car, and started operating the brake. He fell off the brake platform landing on the cement apron between the tracks approximately 10′–14′ below smashing both heels.

Crane testified: " * * * the thought in my mind was to get these cars stopped before they had any chance to get down to the other cars sitting down on the scale where to the best of my knowledge there were people in this car, and I did my best to get these cars stopped before they could get down there, * * *."

He also testified: "At that time or prior to that I had observed a car in the elevator scale area. Cargill conducts unloading operations at the scale. Cars are brought in, loaded on the bean track, and brought into the meal house track at the elevator for unloading. When these two cars broke away I observed a car in the elevator area. Whenever there is a car on the scale it is presumed that somebody is inside working. I assumed there were people inside unloading this car.

"When the two cars broke away, I observed Harris start running toward the far end of the cars. At this time there was a grade in the track, which goes down from the meal house to the elevator. My immediate reaction was to get these cars stopped before they could get to the elevator because of people possibly down in this car working."

Later in plaintiff's testimony there is the following record.

"Q. Yes. Now I will ask you, Mr. Crane, that if prior to the occurrence of your accident on March 21st, 1963 you had ever seen cars being cut off or pulled from the meal house track where they did not stop in the saucer but proceeded down all the way to the elevator? Have you seen that? A. No, sir.

"Q. You had not seen that? A. No, sir.

"Q. Had you heard of them doing that? A. Yes, sir.

"Mr. Dallas: Objected to as calling for hearsay and immaterial. The Court: Sustained."

It is the exclusion of this evidence upon which plaintiff seeks reversal.

We believe it was error to exclude the proffered testimony as hearsay, but hold under the record that it was not prejudicial to this plaintiff because the answer was permitted to stand.

■ "Hearsay evidence has been defined as testimony in court or written evidence, of a statement made out of court; such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. McCormick, Evidence, page 460." Daniels v. Bloomquist, 258 Iowa 301, 312, 138 N.W. 2d 868, 875.

■ The foregoing testimony was not offered to prove the truth of matters asserted. It was offered to show the reason Crane chased the cars in an effort to stop them.

"Wherever an utterance is offered to evidence the *state of mind* which ensued

*in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, * * * and thus the hearsay rule interposes no obstacle to the use of * * * oral informations * * * or any other form of verbal utterances by one person, as circumstantial evidence that *another person had knowledge* or belief as to * * * the *dangerous condition* of a place or a machine." Wigmore on Evidence, 3rd Ed., Vol. VI, Sec. 1789, pp. 235–237. See also: 29 Am.Jur.2d 404–407, Evidence, § 355–357; 31A C.J.S. Evidence § 257, pp. 676–678.

■ However, the question was answered before the objection was sustained. Defendant did not state reasons for the belated objection and did not move to strike the answer. As the answer was allowed to stand, the ruling did not have the effect of striking the testimony and it remained in the record for consideration and plaintiff was not prejudiced by the ruling. Oakes v. Peter Pan Bakers, Inc., 258 Iowa 447, 451, 138 N.W.2d 93, 96; Correll v. Goodfellow, 255 Iowa 1237, 1247, 125 N.W.2d 745, 751; Hamdorf v. Corrie, 251 Iowa 896, 903, 101 N.W.2d 836, 840; Ducummon v. Johnson, 242 Iowa 488, 496, 47 N.W.2d 231, 236; Livingstone v. Dole, 184 Iowa 1340, 1343, 167 N.W. 639, 641; Marple v. Ives, 111 Iowa 602, 603, 82 N.W. 1017.

III. Plaintiff claims the trial court abused its discretion in refusing to allow him to reopen his case to offer certain evidence after he had rested, but before any of defendant's evidence had been introduced. His position is that it explained the following testimony given on cross-examination.

"During the accident movement, when the two cars began to move way, I set the brake on the third car, climbed down the ladder, overtook the Southernmost of the two moving cars, got up on the brake platform, was engaged in turning the brake wheel on that car when for some unknown reason I lost my balance.

"Q. That's right. And you told us before for some unknown reason you lost your balance, isn't that true? A. Yes, sir, I don't know the reason why.

"Q. That's right. And you told us before there was nothing gave way on that car that caused you to fall? A. No, sir."

Plaintiff in his motion to reopen indicated he wanted to read the following excerpt from his own discovery deposition.

"Q. Do you know exactly what it was that caused you to fall? A. Yes, it was the hurry that caused me to fall.

"Q. There wasn't any defect give way on any car or anything like that, was there? A. Well, by anything being at fault, I will say it was because of the situation that I was in such a hurry to get the car stopped so nobody else would get hurt. I didn't think about myself."

The trial court refused to allow plaintiff to reopen his case to present this proffered evidence.

■ It is doubtful that this evidence was admissible in the form offered, but we need not resolve this question as the trial court was well within his discretion in refusing to permit plaintiff to reopen. We will not interfere with such ruling unless there was a clear abuse of discretion. Spry v. Lamont, 257 Iowa 321, 336, 132 N.W.2d 446, 454; Robson v. Barnett, 241 Iowa 1066, 1071, 44 N.W.2d 382, 384; 53 Am.Jur. 109, Trial § 123.

IV. Plaintiff contends the trial court erred in sustaining objections to certain evidence offered in rebuttal. Defendant had introduced evidence that the maximum speed attained by cars being winched from the meal house dock to the elevator and scales was 1.79 miles per hour. Evidence was also introduced that it took longer to set the brakes on some cars than on others.

On rebuttal plaintiff testified these two cars "took off faster than a walk" and seemed to be moving away "pretty quickly" and that the speed of the cars depend-

ed upon a number of factors which he listed.

He also testified that it "varies on how fast you can get the cars stopped, the type of brake, not necessarily the type of brake, it's just some have got more slack in them than others". He was not permitted to answer the following questions:

(1) "What effect, if any, did the speed of these cars, as you observed it, have on your conduct?"

(2) "At the time you attempted to set the brake * * * on car No. 2, what effect if any did this fact [variance in time to set brakes] have upon your state of mind?"

He was not permitted to introduce the following excerpt from his own discovery deposition. "I said if I had been walking then the situation wouldn't have been there because I wouldn't have tried to stop those cars if there hadn't been a chance of somebody getting seriously injured."

The trial court has considerable discretion in determining what is rebuttal evidence. Robson v. Barnett, 241 Iowa 1066, 1071, 44 N.W.2d 382, 384, and citations. The trial court was justified in ruling this evidence was not rebuttal. It was an attempt to prove on rebuttal that plaintiff was hurrying to stop the cars before someone was hurt. It did not attempt to disprove any of the matters introduced by defendant.

We have already said the trial court did not abuse its discretion in failing to allow plaintiff to reopen to offer similar evidence as part of his main case.

For the reason stated herein, we find no reversible error and the trial court is affirmed.

Affirmed.

All Justices concur except RAWLINGS and BECKER, JJ., who dissent.